**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:14-cv-0018** |
| **v.** | ) | |
| | ) | |
| **OLGA MACEDON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |


**ATTORNEYS:**

**ANGELA TYSON-FLOYD, ESQ.**
OFFICE OF THE UNITED STATES ATTORNEY
CHRISTIANSTED, U.S. VIRGIN ISLANDS
*For Plaintiff United States of America*

**OLGA MACEDON, *PRO SE***
CHRISTIANSTED, U.S. VIRGIN ISLANDS
*For Defendant Olga Macedon*


**MEMORANDUM OPINION**[1]

**ROBERT A. MOLLOY, *Chief Judge***

**THIS MATTER** comes before the Court on Plaintiff United States of America's Motion for Summary Judgment ("Mot.") (Dkt No. 39) and accompanying memorandum of law in support thereof ("Mem.") (Dkt. No. 41), both filed on June 30, 2015. Defendant Olga Macedon filed eleven separate responses, both through counsel and *pro se*, in opposition to Plaintiff's Motion between August 4 and August 14, 2015. (Dkt Nos. 46-56.) Plaintiff filed a reply to the

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

first of Defendant's filings on August 31, 2015. (Dkt No. 59.) For the reasons discussed below, the Court will grant Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff filed the Complaint ("Comp.") (Dkt. No. 1) in this matter on May 7, 2014, on behalf of Rural Development ("RD"), a federal agency formerly known as the Farmers Home Administration ("FHA"), and the United States Small Business Administration ("SBA"). In essence, Plaintiff seeks to foreclose on Defendant's property (the "Property") located in the town of Frederiksted, on the island of St. Croix, in the U.S. Virgin Islands,[2] due to Defendant's default on three separate loans, granted by RD and the SBA, all secured by the Property. Compl. at 2-4. Fee simple title to the Property currently is vested in Defendant. *Id.* at 6, ¶ 24.

The first loan was extended to Defendant by the FHA, now RD, on or about May 26, 1981.[3] *Id.* at 2. Defendant executed and delivered a promissory note (the "RD Note") for a principal sum of $48,000 with an annual interest rate of 13%. *Id.*; *see also* Dkt. No. 1-2 (a copy of the RD Note). On the same date, as security for the Note, Defendant executed and delivered a mortgage (the "RD Mortgage") encumbering the Property. Compl. at 2; *see also* Dkt. No. 1-3 (a copy of the RD Mortgage). On or about August 26, 2000, Defendant entered into a "Reamortization and/or Deferral Agreement" (the "RD Reamortization Agreement"), which adjusted the pay schedule of the Note. Compl. at 3; *see also* Dkt No. 1-4 (a copy of the RD Reamortization Agreement). Plaintiff alleges that Defendant is "in default" under the terms

---

[2] The legal description of the Property is: "Plot No. 100, Estate Two Brothers, Smithfield and Hesselberg, Frederiksted, St. Croix, containing 0.72 U.S. acre, more or less, all as more fully shown on Public Works Department Drawing No. 366, dated November 9, 1954." (Dkt. No. 1 at 2.)

[3] Defendant also entered into a related "Subsidy Repayment Agreement" on or about March 17, 1981, which provides for Plaintiff to "recapture interest credits granted to Macedon upon foreclosure." (Dkt. No. 1 at 3; *see also* DKT No. 1-4.)

of the RD Note, the RD Mortgage, and the RD Reamortization Agreement owing to "her failure to pay the monthly installment due on April 26, 2003, and all subsequent installments." Compl. at 3. Plaintiff sent a Notice of Default and Acceleration of the Debt to Defendant. *Id.* at 4; *see also* Dkt. No. 1-6 (a copy of the Notice of Default and Acceleration). Plaintiff alleges that Defendant failed to cure the default and pay the outstanding principal and interest amount. Compl. at 4; *see also* Dkt. No. 1-7 (Certificate of Indebtedness for the RD Note). Accordingly, Plaintiff alleges that RD possesses a first priority interest in the Property. Compl. at 5. As of May 7, 2014, the claimed outstanding balance on the RD Note was $137,932.58. *Id.* at 4. As of January 9, 2026, the outstanding balance on the RD Note, including principal, unpaid interest, and related fees, insurance, and taxes, is $351,492.44. (Dkt. No. 86-1 at 2-4.) Interest continues to accrue on both principal and related fees under the RD Note. Compl. at 4; 86-1 at 3.

The second and third loans were extended to Defendant by the SBA, on or about April 11 and 12, 1990. Compl. at 4. The "First SBA Note" was executed by Butterflies West Workshop, Corporation,[4] a now-defunct corporation that is alleged to "simply [be] an alter ego of its principals Defendant Macedon and Cynthia Williams," on April 11, 2026. *Id.* at 5; *see also* Dkt. No. 1-8 (Affidavit of Lost Promissory Note for the First SBA Note). The "Second SBA Note" (together with the First SBA Note, the "SBA Notes") was executed by Defendant, in her individual capacity, on April 12, 1990. Compl. at 5; *see also* Dkt. No. 1-9 (Affidavit of

[4] The Complaint was originally filed against both Defendant Olga Macedon and Butterflies West Workshop, Corporation ("BWWC"). *See* Compl. However, on October 14, 2015, Plaintiff filed a Notice of Voluntary Dismissal (Dkt. No. 70) as to BWWC, due to BWWC's status as "a defunct corporation without any assets that may be reached in the event the United States was able to obtain a judgment against Defendant." *Id.* at 1. Accordingly, BWWC was terminated as a defendant in this litigation.

Lost Promissory Note for the Second SBA Note). To secure the SBA Notes, Defendant executed and delivered two mortgages to the SBA (the "SBA Mortgages") on April 30, 1990 and May 2, 1990. Compl. at 5; *see also* Dkt. Nos. 1-10, 1-11 (copies of the SBA Mortgages). The SBA Mortgages encumbered the same Property as the RD Mortgage. Compl. at 5; *see also* Dkt. Nos. 1-10 at 1, 1-11 at 1.) Accordingly, the SBA Mortgages are subordinate and inferior to the RD Mortgage. Compl. at 6. As of April 24, 2013, the outstanding balance on the First SBA Note was $24,886.67. *Id.*; *see also* Dkt No. 1-12 (Certificate of Indebtedness for the First SBA Mortgage). As of April 24, 2013, the outstanding balance on the Second SBA Note was $24,695.67. Compl. at 6; *see also* Dkt No. 1-13 (Certificate of Indebtedness for the First SBA Mortgage). To present, these outstanding balance amounts remain unchanged, as interest on the balances were only calculated through the date that the loans were "charged off" by the SBA. Certificates of Indebtedness, Dkt. Nos. 1-12 at 2 and 1-13 at 2; Amended Status Report (Dkt. No. 92) at 2.

Plaintiff seeks various forms of relief related to the Property, the RD Note, and the SBA Notes, which can be summarized as follows: (1) Judgment declaring Defendant has defaulted on the RD Note and RD Mortgage as well as the SBA Notes and the SBA Mortgages; (2) Judgment against Defendant awarding Plaintiff all amounts due under the RD Note; (3) Judgment against Defendant foreclosing the RD Mortgage; (5) Judgment against Defendant foreclosing the RD Mortgage and the SBA Mortgages, (6) Judgment ordering the Property to be sold by the United States Marshal with Plaintiff to be paid all amounts due under the RD Note and the SBA Notes from the proceeds of the sale; (7) Judgment declaring that Defendant is barred and foreclosed of all rights related to the Property; (8) Judgment

declaring the relative order of priority of liens against the Property, with RD possessing the first lien and the SBA possessing the second and third lien on the Property; and (9) Judgment awarding Plaintiff any further relief the Court deems just and proper. Compl. at 7-8.

On October 2, 2014, Magistrate Judge George W. Cannon, Jr., ordered that mediation in this matter should take place by March 3, 2015. Scheduling Order (Dkt. No. 20) at 1. On March 3, 2015, Defendant filed a stipulated motion to extend the mediation deadline until May 31, 2015, citing that the parties "recently received the appraisal report," without which they "could not have proceeded to mediation," and that they "intend to engage in settlement negotiations over the next few weeks." (Dkt. No. 31 at 1-2. On the same day, Magistrate Judge Cannon extended the mediation to June 1, 2015. Scheduling Order (Dkt. No. 32) at 1. No mediation report was filed in response to this deadline. Magistrate Judge Cannon held a status conference with the parties on June 16, 2015. Then, on June 30, 2015, Plaintiff moved for the entry of summary judgment against Defendant, including the costs and expenses of the action. (Dkt No. 39.)

At the time that the motion seeking summary judgment was filed, Defendant was represented by counsel. *See* Dkt. Nos. 42, 44, 45. The response to the motion was due on July 21, 2015. LRCi 6.1(b)(3)(ii). On July 15, 2015, counsel for Defendant filed both a motion (Dkt. No. 44) and an amended motion (Dkt. No. 45) for an extension for an extension of time, requesting an extension of both 10 days (Dkt No. 44 at 1 and 45 at 1) and 20 days, Dkt Nos. 44 at 2, 45 at 2. On September 29, 2015, District Judge Wilma A. Lewis granted the counsel's request for an extension *nunc pro tunc*, without specifying the number of additional days granted to respond to the motion. Order (Dkt. No. 67). An extension of 10 days would have

yielded a response deadline of July 31, 2015, while an extension of 20 days would have yielded a deadline of August 10, 2015. Counsel for Defendant filed an Opposition (Dkt. No. 46) and a Notice of Disputed Facts (Docket No. 47) on August 4, 2015. Defendant made an additional nine *pro se* filings—totaling 158 pages—in opposition to the motion for summary judgment, variously titled and filed as follows:

August 7, 2015:

(1) Notice of Amended Opposition (Dkt. No. 48) (3 pages)
(2) Response Opposing Plaintiff [*sic*] Motion (Dkt. No. 49) (21 pages)
(3) Opposition to Plaintiff [*sic*] Memorandum of Law (Dkt. No. 50) (54 pages)
(4) Statement of Facts and Supportive Documents (Dkt. No. 51) (17 pages)
(5) Opposition to Plaintiff [*sic*] Statement of Facts (Dkt. No. 52) (13 pages)
(6) Opposition to Plaintiff [*sic*] Statement of Facts Supportive Dec[la]ration of Kimme Bryce (Dkt. No. 53) (15 pages)
(7) Affidavit of Truth Oppos[]ing Plaintiff RD and SBA Complaint and Motion for Summary Judgment (Dkt. No. 54) (18 pages)
(8) Affidavit Oppos[]ing Plaintiff RD and SBA Alleged Mortgage Balances in Plaintiff Initial Complain and Motion for Summary Judgment (Dkt. No. 55) (14 pages)

August 14, 2015:

(9) Notification of Corrected Pages (Dkt. No. 56) (3 pages)

On August 31, 2015, Plaintiff filed a reply to the opposition filed by Defendant's counsel. In the United States of America's Reply to Defendant's Opposition to Its Motion for Summary Judgment (Reply) (Dkt. No. 59), Plaintiff noted its objections to the *pro se* filings made by Defendant as "out-of-time, and without leave of Court, in violation of LRCi. 56.1(c)" and as "redundant" filings that "create an unreasonable burden" on Plaintiff to respond. *Id.* at 1.

On September 1, 2015, Defendant made two additional *pro se* filings. (Dkt. Nos. 60, 61.) In Defendant's *pro se* "Notice of Affidavit Supporting Defendant's Amended Opposition," (Dkt. No. 61), Defendant claims that her counsel of record did "not submit the [opposition]

documents in the format, quality, and manner" in which she instructed, and indicated that she had terminated her counsel. *Id*. at 1; *see also* Dkt No. 60 at 3, 5-6. Defendant claims that her *pro se* filings are the "true and only" opposition to Plaintiff's Motion. *Id*. at 2. In Defendant's "Affidavit Oppos[]ing Plaintiff RD and SBA Reply" (Dkt. No. 60), Defendant argues that Plaintiff should be required to respond to her *pro se* filings. *Id*. at 6-7. On September 4, 2015, Defendant's counsel sought to withdraw his representation. Motion to Withdraw as Counsel for Defendant Olga Macedon (Dkt. No. 62). Following the Court's Order (Dkt No. 65), permitting the withdrawal of Defendant's former counsel, Defendant notified the Court that she was unable to find new representation and is "ready to proceed pro se." Notice (Dkt. No. 74) at 1.

## I. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A factual dispute is material when "its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 203-04 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In a motion for summary judgment, the court must view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor[.]" *Curto v. A Country Place Condominium Ass'n.,*

*Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (internal quotation marks omitted). However, "'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." *SodexoMAGIC, LLC*, 24 F.4th at 203-04.

The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine dispute of material fact." *Goldenstein*, 815 F.3d at 146 (citation omitted). The moving party may meet their burden by "pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial." *Honore v. V.I. Hous. Fin. Auth.*, Civil No. 1:16-cv-0055, 2024 U.S. Dist. LEXIS 165220, at *11-12 (D.V.I. Sept. 13, 2024). However, "a conclusory assertion that the nonmoving party has no evidence is insufficient." *Id.* at *12. Thus, a party who moves for summary judgment on the grounds that the nonmoving party has no evidence "must affirmatively show the absence of evidence in the record." *Id.*

If the moving party meets their burden, the burden shifts to the nonmoving party to "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (citing *Celotex*, 477 U.S. at 324). The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Further, the non-moving party cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to avoid summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (footnote omitted). Essentially, it is "'put up or shut up time'" for the nonmoving party, *Daubert*, 861 F.3d at 391

(quoting *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)), because the "non-moving party must identify specific facts and *affirmative evidence* that contradict those offered by the moving party." *Corry v. N.J. Judiciary*, Civil No. 20-15999, 2023 U.S. Dist. LEXIS 95940, at *6 (D.N.J. May 31, 2023) (citation omitted) (emphasis added).

"'Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.'" *Newrez LLC v. Plaskett*, No. 15-cv-0070, 2023 U.S. Dist. LEXIS 176250, at *10 (D.V.I. Sept. 30, 2023) (quoting *Flagstar Bank, FSB v. Lyles*, Civil Action No. 2014-0105, 2017 WL 987448, at *3 (D.V.I. 2017) (internal quotation marks and citations omitted)). "To succeed in a debt and foreclosure action, the plaintiff must prove three elements: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Reverse Mortg. Sols., Inc. v. Charles*, Civil No. 2016-0072, 2025 U.S. Dist. LEXIS 151245, at *8-9 (D.V.I. Aug. 6, 2025); *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 232 (2013). "Where there is no dispute that the mortgagors have failed to pay their obligations under the mortgage and the recorded mortgage is in a specified amount, summary judgment is appropriate." *Newrez LLC*, 2023 U.S. Dist. LEXIS 176250, at *10-11.

## II. DISCUSSION

### A. Defendant's *Pro Se* Filings

As a threshold issue, because both Defendant's then-counsel and Defendant, as a *pro se* filer, have made filings responsive to Plaintiff's motion, the Court must determine which

filings constitute Defendant's response in opposition to Plaintiff's motion. Defendant claims that her *pro se* filings are the "true and only" opposition to Plaintiff's Motion. Dkt. No. 61 at 2. Defendant further argues that the filings made by her then-counsel did "not submit the [opposition] documents in the format, quality, and manner" in which she instructed. *Id*. at 1; *see also* Dkt. No. 60 at 3, 5-6. In turn, Plaintiff objects to Defendant's *pro se* filings as "out-of-time, and without leave of Court, in violation of LRCi. 56.1(c)," and as "redundant" filings that "create an unreasonable burden" on Plaintiff to respond. Reply at 1. Accordingly, Plaintiff responded only to the response filed by Defendant's then-counsel.

This situation is highly unusual and neither party cited any case law in support of their respective positions. The Court finds that it has limited precedent available to guide its determination. However, in a case where a criminal defendant sought to file additional *pro se* arguments after his counsel of record had already filed a responsive brief, the Third Circuit has treated such a filing as a supplemental brief and required the defendant to seek leave of the Court before filing such a brief. *See United States v. Turner*, 677 F.3d 570, 574-75 (3d Cir. 2012) (noting a "longstanding prohibition on 'hybrid [*pro se* and counseled] representation'"). At least in the criminal context—where the right is counsel is constitutional, and thus protections are heightened compared to the civil context—the Third Circuit has stated that:

> By requiring that briefs be filed only by counsel, we ensure that counsel and client speak with one voice. When a client seeks to raise additional issues, counsel must evaluate them and present only the meritorious ones, rather than simply seeking leave for the client to file a supplemental brief. This promotes effective advocacy because it prevents counsel from allowing frivolous arguments to be made by the client.
>
> ***

> If represented parties could file pro se briefs, their adversaries would have to respond on two distinct fronts. Apart from the procedural morass that would follow such "hybrid" advocacy (as occurred in this case), our attention would be diverted from potentially meritorious arguments.

*Id.* at 579 (citations omitted). In the same vein, the Third Circuit also held that "[o]nce a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously requests that counsel be silenced." *Id.* at 578 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)).

The Court finds these prudent principles to adopt, even in the civil context, for both effective advocacy and judicial economy of the proceedings for all parties. First, "because appearances by counsel must be presumed to be with the defendant's acquiescence," the Court will accept the responsive briefs filed by Defendant's then-counsel as Defendant's response in opposition to Plaintiff's motion (the "Opposition"). *See id.* Second, the Court finds Defendant's nine *pro se* filings to be unauthorized supplemental filings.[5] *Cf. Turner*, 677 F.3d at 579 ("[E]xcept in cases governed by *Anders*, parties represented by counsel may not file pro se briefs."). Defendant's *pro se* filings reflect an understanding of the need to communicate in advance with the Court,[6] and yet Defendant's *pro se* filings were not filed

---

[5] To the extent that it is appropriate to construe any of these filings—or all, in the aggregate—as a motion to supplement the briefing filed by Defendant's counsel, the Court hereby denies such a motion.

[6] For example, Defendant demonstrates in her filings an understanding of requesting the Court for additional time to file. (Dkt No. 60 at 5 ("I had to request for Attorney Webster to request for time extension that we can make the scheduled response time.").) Defendant additionally demonstrates an understanding of how to notify the Court that she wishes to terminate a relationship with counsel. (Dkt No. 61 at 1 ("This is also a notification that Attorney Martial A. Webster is terminated and dismissed from this litigation action for the Defendant.").) Finally, Defendant demonstrates the ability to inform the Court that she is proceeding *pro se* in the absence of an attorney to represent her. (Dkt No. 74 at 1 ("[T]he Defendant desires to assure the Court that the Defendant would like to proceed pro se[.]").) However, all of these communications occurred after Defendant made her nine supplemental filings.

with leave of Court or with any prior indication to the Court that Defendant intended to terminate counsel and proceed *pro se*. Further, Defendant's *pro se* filings do not abide by the Local Rules governing page limits for briefing, as the nine *pro se* filings total 158 pages. LRCi 7.1(c) ("[N]o document filed with the Court shall exceed 20 pages without leave of Court . . . .").[7] Requiring Plaintiff to respond to such a lengthy response, in violation of the Local Rules, particularly in light of the Opposition filed by Defendant's counsel preceding these *pro se* filings, would impose an unreasonable burden upon Plaintiff.

**B. Summary Judgment**

Plaintiff argues that it is entitled to summary judgment, as a matter of law, because "there is no genuine issue of material fact" that (1) Defendant "executed and delivered promissory notes and mortgages to the United States"; (2) "the promissory notes are secured by the mortgages [on the Property]"; (3) Defendant "is in default under the terms . . . of the notes and mortgages"; and (4) Defendant "has failed to cure the default and pay all outstanding amounts demanded." Mem. at 1-2. Plaintiff asserts that it therefore has met the required elements to succeed on a foreclosure claim under Virgin Islands law, namely that: "(1) the defendant executed a promissory note and mortgage; (2) the defendant is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Id.* at 3 (citing *Thompson v. Florida Wood Treaters, Inc*., 2009 WL 4730784, at * [sic] (D.V.I. Dec. 6, 2009) (other citation omitted).[8]

---

[7] The quoted text of the rule reflects the Rule in effect at the time the filings were made. The local rules have since been amended as of February 1, 2026.

[8] Plaintiff's citation as it appears in its Memorandum is improper. The correct citation is: *Thompson v. Fla. Wood Treaters, Inc*., Civil No. 2006-224, 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009), *aff'd*, 405 F. App'x 610 (3d Cir.

Defendant, in turn, makes a variety of claims in the opposition submitted by her former counsel.[9] *See* Defendant Olga Macedon[ʻs] Opposition to Plaintiff United States of Americas' Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Opp'n) (Dkt. No. 46). Defendant's arguments can be summarized as follows: (1) the Statute of Limitations bars this action, *id.* at 10-12; (2) the authenticity of the RD Note and the SBA Notes is not sufficiently established, *id.* at 12; (3) Plaintiff has not "made a good effort to mediate and resolve this matter," *id.* at 14; and, (4) Plaintiff has failed to provide "certified and forensic audited billings statements to justify the claims," *id.* at 15.[10]

**1. Execution of Notes and Mortgage**

The first element of a debt and foreclosure action is that "the debtor executed a promissory note and mortgage." *Reverse Mortg. Sols., Inc. v. Charles*, Civil No. 2016-0072, 2025 U.S. Dist. LEXIS 151245, at *8-9 (D.V.I. Aug. 6, 2025). Plaintiff argues that it is

2010). In addition, the cited language is nearly a direct quote, except for the substitution of semicolons for commas in the original.

[9] The Courts observes that the Opposition submitted by Defendant's former counsel is procedurally chaotic. First, two affidavits—totaling 25 pages—signed by Defendant are appended to Defendant's Memorandum of Law. (Dkt. Nos. 46-1, 46-2.) Second, Defendant's Statement of Disputed Facts does not address the facts upon which Plaintiff relies in any manner, much less in the manner prescribed Local Rule 56.1(b)(1) wherein Defendant is required to identify "using the corresponding serial numbering" which facts are "undisputed" and which facts are "disputed" and provide "precise portions of the record relied upon as evidence of each disputed material fact." LRCi 56.1(b)(1).

[10] Defendant also makes a number of cursory and conclusory arguments, which lack any identification of supporting facts and/or case law, including that: (1) Plaintiff failed to "meet its burden of production" under Rule 56, Opp'n at 6; (2) Plaintiff failed to "properly service Macedon's mortgage and loan on her home," *id.* at 7, and is in "breach of duty and agreement," *id.* at 8, 9; (3) the affirmative defense of laches applies, *id.* at 8; (4) Plaintiff "fail[ed] to mitigate on a timely basis thereby causing quantitative and value-added damages," *id.*; (5) "[t]he question on how, why, and when Macedon was determined to be in arrears, her loan accelerated, and the arrears occurred while Defendant was a party litigant in the civil case of *Chiang, et. al. v. Schafer*, Civ. No. 2000-0004 present trial issues of fact," *id.* at 7; (6) that the RD did not follow procedural foreclosure requirement for the RD Notes, *id.* at 13; and, (7) Plaintiff failed to establish that it is a "holder in due course of the notes," *id.* at 14. "[B]rief conclusory" arguments such as these "are not sufficiently presented and argued" for the Court to consider granting relief. *Garcia v. Cruzan Viril, Ltd.*, Civil No. 2023-0007, 2026 U.S. Dist. LEXIS 30236 at *11 n.3 (D.V.I. Feb. 13, 2026).

"undisputed that Macedon executed and delivered a note and mortgage to the United States through the [FHA], the predecessor to the [RD], and the [SBA]." Mem. at 4; *see also* Statement of Facts (SOF) (Dkt. No. 40) at 1-4. Defendant, in turn, argues that the authenticity of the Notes has not been established under Title 11A of the Virgin Islands Code, Section 3-308, which states that "the authenticity of . . . each signature on the instrument is admitted unless specifically denied in the pleadings." Opp'n at 12 (citing 11A V.I.C. § 3-308).) Defendant argues that because she categorically denied paragraphs 6-10 and 14-17 of the Complaint in her Answer, she thereby denied the authenticity of each signature in the documents appended to the Complaint. *Id.*

The Notes and the Mortgages submitted to the Court as exhibits to the Complaint, Dkt. Nos. 1-2, 1-3, 1-8, 1-9, 1-10, 1-11, establish that Defendant executed both the Notes in the amounts described in the Complaint and the Mortgages securing each Notes with the Property as described in the Complaint. *See Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *9-10 (finding this element met with the filing of the relevant notes and mortgages on the record); *Newrez LLC*, 2023 U.S. Dist. LEXIS 176250, at *11-12 (finding this element met based on the submission of a copy of the relevant note and mortgage on the record). Thus, Plaintiff has met its initial burden as the moving party to "'demonstrate the absence of a genuine [dispute] of material fact'" as to this element. *Goldenstein*, 815 F.3d at 146 (citations omitted).

The burden thus shifts to Defendant, as the nonmoving party, to "'go beyond the pleadings and . . . designate specific facts showing that there *is* a genuine issue for trial.'" *Daubert*, 861 F.3d at 391 (quoting *Celotex*, 477 U.S. at 324, adding emphasis and omitting

internal quotation marks). Defendant fails to meet her burden in this regard. First, Defendant's Answer – which does *categorically* deny a majority of the allegations made in the Complaint in a blanket manner – does not contest, *specifically*, the authenticity of the signatures on the Notes or the Mortgages in any manner. *See* Answer (Dkt. No. 6) at 1-2. Thus, Defendant has failed to contest the authenticity of the signatures in the procedurally correct manner. *See* 11A V.I.C. § 3-308 (requiring authenticity to be "*specifically* denied in the pleadings" (emphasis added)).[11] Second, Defendant's own Statement of Disputed Facts (Dkt. No. 47) claims that "[a]s the original maker of the promissory and mortgage notes as negotiable-security instruments with the Plaintiff . . . Macedon has personal knowledge, has kept records to the best of her ability, and has . . . interact[ed] . . . with the Plaintiff USA-RD for the past 34 years and with the Plaintiff USA-SBA for the past 25 years." *Id*. at 1, ¶ 2. Thus, Defendant has failed to contest the authenticity of the signatures in a manner that is consistent with Defendant's own narration of the facts, and Defendant certainly has not "designate[d] specific facts," *Daubert*, 861 F.3d at 391, that could support a finding that Defendant's signatures on the Notes and Mortgages are not authentic – that is, forged or unauthorized.

Accordingly, the Court finds that Plaintiff has borne its burden to establish that there is no "genuine dispute of material fact," *Goldenstein*, 815 F.3d at 146, as to the first element

---

[11] The Uniform Laws Comment 1 to 11A V.I.C. § 3-308 affirm this approach: "The question of the burden of establishing the signature arises only when it has been put in issue by specific denial." 11A V.I.C. § 3-308 Uniform Laws Comment 1. Further, the comment clarifies that "until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid." *Id*. Defendant has not introduced any evidence that would support a finding that the signature is "forged or unauthorized."

of a debt and foreclosure action—that "the debtor executed a promissory note and mortgage," *Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *8-9.

**2. Default**

The second element of a debt and foreclosure action is that "the debtor is in default under the terms of the note and mortgage." *Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *8-9. Plaintiff argues that "Macedon has failed to make payments under the terms of the notes and is in default." Mem. at 4; *see also* SOF at 2. Defendant, in turn, appears to dispute that "Defendant Macedon is not in default under the terms and conditions of the notes and mortgages, and that Macedon has not failed to cure the default and pay all outstanding amounts demanded as claimed by the plaintiff [sic]," because "Plaintiff needs to present a certified and forensic audited billing statements [sic] to justify the claims of the Plaintiff. . . . In addition, Plaintiff has failed to mitigate the loan from the time of accruement, 1997 and 2003 . . . ." Opp'n at 15-16.

The Notice of Acceleration and Certificates of Indebtedness submitted to the Court as exhibits to the Complaint, Dkt. Nos. 1-6, 1-7, 1-12, 1-13, establish that Defendant failed to make payments as required under the terms of each Note and, thus, defaulted on each Note and the Mortgages as described in the Complaint. *See United States v. Johnson*, Civil No. 2018-0016, 2024 U.S. Dist. LEXIS 4401, at *16 (D.V.I. Jan. 9, 2024) (finding this element met because plaintiff "provided evidence that the Borrower was in default on the notes and mortgages by failing to make payments due under those documents" through an acceleration notice and demand letter); *see also Newrez LLC*, 2023 U.S. Dist. LEXIS 176250, at *12 (finding the same based on three letters warning of impending default). Thus, Plaintiff has met its

initial burden as the moving party to "demonstrate the absence of a genuine [dispute] of material fact" as to this element. *Goldenstein*, 815 F.3d at 146 (citations omitted).

The burden thus shifts to Defendant, as the nonmoving party, to "designate specific facts showing that there *is* a genuine issue for trial.'" *Daubert*, 861 F.3d at 391 (quoting *Celotex*, 477 U.S. at 324, adding emphasis and omitting internal quotation marks). As Plaintiff notes in its Reply, Defendant "rests on mere conclusory statements that the amounts that the United States alleges is owed to RD and SBA are incorrect or flawed figures," and "has failed to provide any evidence of her own" demonstrating that the Certificates of Indebtedness are incorrect or miscalculated. Reply at 12. Further, there is evidence that Plaintiff did engage in mitigation efforts, through the RD Reamortization Agreement, Dkt No. 1-5, and Defendant points to neither specific mitigation efforts she believes were legally required nor to any legal authority that establishes that failure to mitigate in some specified manner could block summary judgment. This is, thus, an insufficient showing to meet Defendant's burden.

Accordingly, the Court finds that Plaintiff has borne its burden to establish that there is no "genuine dispute of material fact," *Goldenstein*, 815 F.3d at 146, as to the second element of a debt and foreclosure action, namely, that "the debtor is in default under the terms of the note and mortgage," *Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *8-9.

**3. Authorization to Foreclose**

The third element of a debt and foreclosure action is that "the lender is authorized to foreclose on the property mortgaged as security for the note." *Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *8-9. This element is met when a plaintiff shows that "that it owns and holds the notes, mortgages, subsidy repayment agreement, and reamortization agreements,"

and that "it is entitled to foreclose on the Property" based upon the terms of the relevant documents. *Johnson*, 2024 U.S. Dist. LEXIS 4401, at *16-17; *see also Newrez LLC*, 2023 U.S. Dist. LEXIS 176250, at *12 (finding this element met because plaintiff showed that "it currently retains all right, title, and interest in the subject Note and Mortgage" and the relevant mortgage contained terms providing for foreclosure on the property). As with the other elements, the Notes and the Mortgages submitted to the Court as exhibits to the Complaint, Dkt Nos. 1-2, 1-3, 1-8, 1-9, 1-10, and 1-11, establish that Plaintiff is authorized to foreclose on the Property according to the terms of the Mortgage.[12]

The burden thus shifts to Defendant, as the nonmoving party, to "'go beyond the pleadings and . . . designate specific facts showing that there *is* a genuine issue for trial.'" *Daubert*, 861 F.3d at 391 (quoting *Celotex*, 477 U.S. at 324, adding emphasis and omitting internal quotation marks). Defendant first argues that a six-year statute of limitations bars this action. Opp'n at 10-12. Title 11A of the Virgin Islands Code, Section 3-118(a) provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."[13] Defendant claims that because "Defendant has not paid the notes since 2003 and 1997 respectively," that this

---

[12] For example, the RD Note states that "[f]ailure to pay when due any debt evidenced hereby . . . shall constitute default under any other instrument evidencing a debt . . . securing or otherwise relating to such a debt." Dkt. No. 1-2 at 3. The RD Mortgage similarly states: "[s]hould default occur in the performance or discharge of any obligation in this instrument or secured by this instrument . . . the Government, at its option, with or without notice, may [] declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable[.]" Dkt. No. 1-3 at 3.

[13] Similarly, Defendant also flags that "if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand." 11A V.I.C. § 3-118(b). Under either subsection of this statute, the result of a six-year statute of limitations, if applicable, would be same.

action commenced in 2014 is barred by this statute of limitations. Opp'n at 11. However, the case that Defendant cites in support of her position, *Bank of Nova Scotia v. St. Croix Drive-In Theatre, Inc.*, 552 F. Supp. 1244, 19 V.I. 319 (D.V.I. 1982)*, aff'd* 728 F. 2d 177 (3rd Cir. 1984), holds that "the law is clear that separate actions are available in actions for debt and against a mortgage" and that "the right of foreclosure is a right separate from the right to sue on the debt." *Bank of Nova Scotia*, 552 F. Supp at 1251. Therefore, a statute of limitations for a debt action does not apply to foreclosure action. *See also UMLIC VP LLC v. Matthias*, 364 F.3d 125, 131 (3d Cir. 2004) (holding that a plaintiff "may foreclose on the mortgages [as an equitable remedy] irrespective of whether it may sue *in personam* to enforce the defendants' personal guarantees [in a debt action due to the statute of limitations applicable to debt actions]"). Further, the *Matthias* court held that "there is no federally provided statute of limitations for mortgage foreclosure actions." *Id*. at 134. It then cites "'the maxim [that] time does not run against the sovereign, combined with the principle that the United States is not bound by a statute of limitations unless Congress has explicitly expressed one . . .'" and concludes that "there is no statue of limitations on UMLIC's action . . . ." *Id*. Similarly, no statute of limitations is applicable in the matter bar. Accordingly, the Court will not bar summary judgment in favor of Plaintiff.

Defendant also argues that Plaintiff has not "made a good effort to mediate and resolve this matter." Opp'n at 14. Title 28 of the Virgin Islands Code, Section 531(b) provides that "[p]rior to the entry of any judgment of foreclosure, the parties must provide the Court with evidence that a good faith effort was made to settle the matter through mediation." As noted above, mediation was ordered in this case. Defendant's own motion to extend the

mediation deadline states that that "parties intend to engage in settlement negotiations over the next few weeks" after the receipt of an appraisal report. Stipulated Motion for Continuance of Status Conference Scheduled for March 4, 2015 and Motion to Extend Mediation Deadline (Dkt. No. 31) at 1. The record is devoid of any mediation report. In its Reply, Plaintiff relates the intervening events as follows:

> In the present case, the United States did not file a motion to dispense with mediation. However, counsel for the parties discussed the feasibility of conducting mediation and both counsels determined that mediation would not result in settlement of this action. . . . [I]t was evident that mediation would not obtain a result where Defendant would save her home from foreclosure. The parties discussed post foreclosure remedies, such as redemption that could substantially reduce the amount Defendant would have to pay compared to the amount she would have to pay based on the Certificates of Indebtedness prior to entry of a foreclosure judgment. Defendant did not challenge Plaintiff's counsel's assessment that this matter was not suitable for mediation. In fact, Defendant's counsel stated that his client had no money for mediation and did not press the matter further. Thus, it is disingenuous for Defendant to argue that Plaintiff has not made a good faith effort to mediate. For a certainty, even if the parties were to mediate, the United States could not reasonably offer to settle this matter for any significant amount under the outstanding debt as presented in Plaintiff's motion for summary judgment. This is an amount that the Defendant has demonstrated over the years that she cannot afford to pay. Therefore, the United States did not act in bad faith when it determined that mediation would not be helpful.

Reply at 10-11. The Court notes that Plaintiff United States may not simply unilaterally determine that mediation "would not be helpful," *id.*, and unilaterally dispense with a motion to waive the mediation requirement. While Plaintiff argues that the mediation requirement is "only required in the local courts of the Virgin Islands," *id*. at 10, it is the current practice of this Court to respect the applicability of the mediation requirement codified in

Section 531(b).[14] *See, e.g.*, *Newrez LLC v. York*, Civil No. 2017-0029, 2025 U.S. Dist. LEXIS 42663, at n.3 (D.V.I. Mar. 10, 2025) (granting a waiver of the applicable statutory mediation requirement based on the parties' joint stipulation). However, based upon the record of the mediation ordered in this matter—which ultimately did not take place—and the joint status conference held following the mediation deadline, which preceded the filing of the instant Motion and aligns with Plaintiff's representations regarding the parties' joint decision to forego mediation, the Court will deem the mediation requirement satisfied in this matter.[15]

Accordingly, the Court finds that Plaintiff has borne its burden to establish that there is no "genuine dispute of material fact," *Goldenstein*, 815 F.3d at 146, as to the third element of a debt and foreclosure action—that "the lender is authorized to foreclose on the property mortgaged as security for the note," *Reverse Mortg. Sols.*, 2025 U.S. Dist. LEXIS 151245, at *8-9.

**III. CONCLUSION**

In view of the foregoing, the Court will grant Plaintiff's motion for summary judgment (Dkt No. 39), and grant summary judgment in favor of Plaintiff, United States of America, against Defendant, Olga Macedon. Plaintiff has established that Defendant executed the RD Note, the RD Mortgage, the SBA Notes, and the SBA Mortgage, that Defendant is in default under the terms of the said Notes and Mortgages, and that Plaintiff is authorized by the terms

---

[14] This Court previously has observed that "[w]hether 28 V.I.C. § 531(b) applies to cases filed in District Court involving federal agency-generated loans is questionable" but ultimately "not [yet] resolved[.]" *LLP Mortg., Inc. v. Club Comanche, Inc.*, Civil No. 2014-0057, 2020 U.S. Dist. LEXIS 144874, at *16 (D.V.I. Aug. 12, 2020). However, this is a narrower issue than the argument presented by Plaintiff.

[15] To the extent that the mediation requirement is not somehow satisfied by the events in the record and Plaintiff's representations regarding mediation discussions between the parties, the Court alternatively hereby waives the mediation requirement in this matter.

of the said Notes and Mortgages to foreclosure on the Property securing those Notes and Mortgages. Defendant's arguments in opposition to the requested relief did not designate specific facts that demonstrate a genuine dispute of material fact. Consequently, the Court finds no genuine dispute of material fact exists and that Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court will grant the relief requested by Plaintiff.

An appropriate Order and Judgment accompanies this Memorandum Opinion.

**Dated:** September 30, 2026

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**